IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STATE FARM FIRE & CASUALTY  \*
COMPANY,
                                                                                                       \*

and                                                                     \*

INEZ MORGAN                                       \*    Case NO: AMD 02-2592

    Plaintiffs                              \*

v.                                                             \*

SKYLINE CORPORATION,

    Defendant                            \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## AFFIDAVIT OF REXFORD WILSON

I declare and affirm, under penalty of perjury, that I am over the age of eighteen (18) years, am competent to testify to the matters set forth herein, and that I have personal knowledge of the following facts:

1. I have been retained by Defendant, Skyline Corporation (Homete Corporation), as an expert witness in this case.

2. On May 15, 2000, I received a call from a Skyline representative who asked me to look into the fire that had occurred at the subject property (the Morgan home). I already had appointments scheduled, but I rearranged my schedule to travel from South Carolina to the scene to inspect the Morgan home.

3. I spoke with Mr. Tom Pavis, State Farm's fire expert, on May 16, 2000. Mr. Pavis arranged to meet me at the Morgan home on May 18, 2000.

EXHIBIT A

4. I inspected the home on May 18, 2000. At that time, Mr. Pavis informed me of his theory that the fire had begun above the ceiling from to an "arcing" wire.

5. I determined that the origin of the fire was actually inside a three-by-three-by-three foot area of the Northeast corner of the home. My conclusion was based upon various factors, most important of which was that the deepest char of the burn was in this area of the Northeast corner of the home and the consistently decreasing char depth moving out from this area.

6. I asked Mr. Pavis and Mr. John Morris (State Farm's claims adjuster) to retain and preserve the area of the Northeast corner of the home where I believed the fire started.

7. Mr. Morris and Mr. Pavis directly refused my request to preserve the three-by-three-by-three foot area of the Northeast corner of the home. Mr. Pavis told me that if I wanted to preserve the evidence I should go ahead and preserve it myself because he did not believe that it played a role in the origin of the fire.

8. I have only one arm and I was, therefore, physically incapable of cutting out and preserving the evidence by myself.

9. Even if I had been physically capable of cutting out the area of the Northeast corner of the home myself, I would not have done so because I knew that the home was owned and controlled by Ms. Inez Morgan (the homeowner) and/or was under the control of Ms. Morgan's insurer, State Farm.

10. Moreover, even if I had been physically capable of cutting out the area of the Northeast corner of the home myself, I could not have done so because I did not have the necessary tools in my possession. I had already re-arranged my schedule to be present at the

2

scene and I was very far away from my office in South Carolina. Therefore, I did not have the ability to retrieve my tools in any event.

11. Destruction of the three-by-three-by-three foot section of the Northeast corner of the home where I believe the fire originated makes it impossible for me to provide a fair representation of the origin of the fire to the jury.

12. It is not possible to reconstruct the evidence destroyed by State Farm for several reasons. First, the moisture content of the wood in the Morgan home at the time of the fire cannot be re-created. The moisture content of wood significantly affects the ease of ignition, the rate of flame speed, and the penetration of wood. Since the amount of moisture in the wood at the time of the fire is unknown, conditioning of any sample to the exact moisture point is impossible. Second, the specific type of wood used in the Morgan home is unknown and cannot be re-created. The type of wood and its sap content affects the specific burn rate. Third, the air for burning is affected by the actual wind speed and direction at the time of the fire. The amount of air a sample receives has a significant affect on the burning rate and the amount of char created. The wind speed and direction were not recorded and, thus, cannot be re-created. Fourth, it is impossible to re-create the actual dimensions of the Northeast corner of the home because they changed over the years due to on-site work and, thus, are unknown. The specific placement of materials is critical for radiant flame energy at the initial ignition point, and the speed of fire development.

_____          October 8, 2003
Rexford Wilson                                       Date

3